# Supreme Court of Florida

_____

No. SC17-1434
_____

**INTERNATIONAL ASSOCIATION OF FIREFIGHTERS LOCAL S-20, et al.,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

November 8, 2018

PER CURIAM.

We have for review the decision of the First District Court of Appeal in

*International Association of Firefighters Local S-20 v. State*, 221 So. 3d 736 (Fla.

1st DCA 2017). After further consideration, we conclude that jurisdiction was

improvidently granted. Accordingly, we hereby discharge jurisdiction and dismiss

this review proceeding.

It is so ordered.

CANADY, C.J., and POLSTON, LABARGA, and LAWSON, JJ., concur.
LEWIS, J., dissents with an opinion, in which PARIENTE and QUINCE, JJ.,
concur.

NO MOTION FOR REHEARING WILL BE ALLOWED.

LEWIS, J., dissenting.

I dissent from the majority's decision to discharge jurisdiction in this case. The right to bargain collectively is a fundamental right. *See* art. I, § 6, Fla. Const.; *Hillsborough Cty. Governmental Emps. Ass'n v. Hillsborough Cty. Aviation Auth.* (*Hillsborough*), 522 So. 2d 358, 362 (Fla. 1988). The government of Florida belongs to the people. *See Traylor v. State*, 596 So. 2d 957, 963 (Fla. 1992) (explaining that "[e]ach right" in the Declaration of Rights is "a distinct freedom guaranteed to each Floridian against government intrusion" and "operates in favor of the individual, against [the] government"). The people of Florida have voted and voiced their desire with regard to how they want their government operated.

> An amendment to the Constitution, duly adopted, is the last expression of the will and intent of the law-making power and prior provisions inconsistent therewith or repugnant to the amendment are modified or superseded to the extent of inconsistency or repugnancy.

*State v. Div. of Bond Fin. of Dep't of Gen. Servs.*, 278 So. 2d 614, 617-18 (Fla. 1973) (citing *Advisory Op. to Governor*, 12 So. 2d 876 (Fla. 1943); *Sylvester v. Tindall*, 18 So. 2d 892 (Fla. 1944); *Bd. of Pub. Instruction of Polk Cty. v. Bd. of Comm'rs of Polk Cty.*, 50 So. 574 (Fla. 1909); *Jackson v. Consol. Gov't of City of Jacksonville*, 225 So. 2d 497 (Fla. 1969)). Article I, section 6 of the Florida Constitution should be considered the last expression of the will of the people. *See id.* at 617 ("It is a fundamental rule of construction that, if possible, amendments to the Constitution should be construed so as to harmonize with other constitutional

- 2 -

provisions, but if this cannot be done, the amendment being the last expression of the will of the people will prevail."). The Governor's constitutional veto authority is the earlier of the two conflicting provisions, having existed as early as the Florida Constitution of 1838. Art. III, § 16, Fla. Const. (1838). Article III, section 16 of the 1838 Constitution provided that any bill which the Governor objected to was to be returned to the house in which the bill originated, and that house would reconsider the bill. *Id.* By contrast, the Florida Constitution did not provide public employees the right to bargain collectively until the 1968 constitutional revision. Art. I, § 6, Fla. Const. (1968).

After the 1968 constitutional revision, the Legislature had an obligation to effectuate the fundamental right to collectively bargain. In *Dade County Classroom Teachers' Ass'n v. Ryan*, 225 So. 2d 903, 906 (Fla. 1969), the Court held that it is essential that the Legislature "enact appropriate legislation setting out standards and guidelines and otherwise regulate the subject within the limits of said Section 6." This Court has also held that if the Legislature failed to implement the rights in question the "Court [would], in an appropriate case, have no choice but to fashion such guidelines by judicial decree in such manner as may seem to the Court best adapted to meet the requirements of the constitution." *Dade Cty. Classroom Teachers Ass'n v. Legislature of Fla.*, 269 So. 2d 684, 688 (Fla. 1972).

There can be no doubt that when any party, including a Governor, is involved in a direct dispute and at the same time maintains the power to act as final arbiter of the dispute through the power of veto—the impasse resolution process is subverted. *See In re Murchison*, 349 U.S. 133, 136 (1955) ("A fair trial in a fair tribunal is a basic requirement of due process."). The old maxim remains true: "[N]o man is allowed to be a judge in his own cause; because his interest would certainly bias his judgment, and, not improbably, corrupt his integrity." *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 876 (2009) (quoting The Federalist No. 10, at 59 (J. Madison) (J. Cooke ed. 1961)). In this context, the use of veto authority, after the impasse has been resolved by the Legislature, allows the Governor to act as a judge in his own cause, thereby obstructing due process. *See id.* (recognizing that no individual should be allowed to judge his or her own case given the inherent risk of bias in doing so). With the Governor holding the power to veto the Legislature's decision resolving the impasse, the fundamental right of public employees to collectively bargain is rendered hollow. *See Int'l Ass'n of Firefighters Local S-20 v. State* (*Local S-20*), 221 So. 3d 736, 740 (Fla. 1st DCA 2017) (Thomas, J., dissenting). In acting as the third-party decision maker, the Legislature's decision should be implemented in a process that does not include executive branch veto.

The Legislature has an obligation to the people of Florida to create a system that shields fundamental rights against due process violations. The Legislature cannot dodge the issue of a flawed system as merely "subject to politics." Fundamental rights must be balanced to exist and be protected within a constitutional framework. It is the responsibility of the Legislature to create a constitutional structure that would not leave any party that was a participant in the dispute as the final decider. This may not be an easy task; however, it is a necessary task nonetheless to protect fundamental rights as presently contemplated.

Within these narrow circumstances the Legislature may consider a number of alternatives including the implementation of a state compelling interest test in which the Governor would be required to demonstrate a compelling state interest to sustain a veto of a legislative resolution of an impasse. *See Local S-20*, 221 So. 3d at 740-41 (Thomas, J., dissenting) ("[O]nce the Legislature has ruled in the public employees' favor and against the Governor, it cannot be reconciled with Article I, section 6 of the Florida Constitution to allow the Governor to render the Legislature's decision a nullity through the veto authority."). In recognizing that public employees have the right to collectively bargain as a fundamental right, the Legislature may decide that this fundamental right should be subject to official abridgment only upon a showing of a compelling state interest. *Hillsborough*, 522 So. 2d 358. Nevertheless, members of the Legislature cannot throw up their hands

and simply say "oh well." Democracy can be dangerous and full of complexities; and, while the overall structure remains in concept, the moving parts move as directed by the people.

For the reasons set forth above, I dissent.

PARIENTE and QUINCE, JJ., concur.

Application for Review of the Decision of the District Court of Appeal – Direct Conflict of Decisions

First District - Case No. 1D16-618

Tobe M. Lev and Richard Siwica of Egan, Lev & Siwica, P.A., Orlando, Florida,

for Petitioner

Pamela Jo Bondi, Attorney General, and Amit Agarwal, Solicitor General, Tallahassee, Florida,

for Respondent

Mark A. Touby and Richard A. Sicking of Touby, Chair & Sicking, P.L., Coral Gables, Florida,

for Amicus Curiae Florida Professional Firefighters, Inc., International Association of Firefighters, AFL-CIO

Thomas W. Brooks of Meyer, Brooks, Demma & Blohm, P.A., Tallahassee, Florida; and G. "Hal" Johnson, Florida Police Benevolent Association, Tallahassee, Florida,

for Amicus Curiae Florida Police Benevolent Association, Inc.