734 So.2d 1030 (1999)
Lawton CHILES, as Governor of the State of Florida, Appellant,
v.
STATE EMPLOYEES ATTORNEYS GUILD and Raymond J. Greene, Appellees.
No. 93,665.
Supreme Court of Florida.
May 20, 1999.
Rehearing Denied June 30, 1999.
*1031 Robert A. Butterworth, Attorney General, Kimberly J. Tucker, Deputy General Counsel, Gerald B. Curington, Assistant Deputy Attorney General, and Louis F. Hubener and M. Catherine Lannon, Assistant Attorneys General, Tallahassee, Florida, for Appellant.
Thomas W. Brooks and Anthony D. Demma of Meyer and Brooks, P.A., Tallahassee, Florida, for Appellees.
WELLS, J.
We have on appeal Chiles v. State Employees Attorneys Guild, 714 So.2d 502 (Fla. 1st DCA 1998), a decision in which the First District Court of Appeal declared section 447.203(3)(j), Florida Statutes (1997), unconstitutional. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. The State regulates public employee collective bargaining under chapter 447, part II, Florida Statutes. Section 447.203(3)(j) of this chapter in effect prohibits "[t]hose persons who by virtue of their positions of employment are regulated by the Florida Supreme Court" from engaging in collective bargaining with their government employer. We hold that this prohibition is unconstitutional under article I, section 6 of the Florida Constitution because the State has failed to prove the requisite necessity for a wholesale ban on collective bargaining by government lawyers. In so holding, we emphasize that lawyers exercising their constitutional right to bargain collectively may not violate the Rules Regulating The Florida Bar and must give unqualified deference to the traditional duty of loyalty that a lawyer owes to a client. We affirm the decision below.
On March 23, 1993, the State Employees Attorneys' Guild (SEAG) filed a representation certification petition with the Public Employees Relations Commission (PERC), seeking to represent a bargaining unit of regular full-time attorneys licensed to practice law in Florida who are employed as attorneys by the State of Florida. PERC found the petition to be sufficient on its face and ordered an evidentiary hearing to resolve factual and legal disputes concerning the petition. See State Employees Attorneys Guild v. State, 19 F.P.E.R. ¶ 24116 (1993).
The State subsequently petitioned this Court to issue a writ prohibiting PERC from going forward with the evidentiary hearing on SEAG's petition. The State argued that allowing government lawyers to unionize encroached upon this Court's exclusive jurisdiction to regulate the practice of law. This Court determined that it was without jurisdiction to issue a writ of prohibition because PERC was not a "court." State ex rel. Chiles v. Public Employees Relations Comm'n, 630 So.2d 1093, 1094 (Fla.1994). The Court also declined to exercise its "all writs" jurisdiction, finding that "collective bargaining by state employed attorneys does not encroach upon this Court's jurisdiction over the admission of attorneys to the practice of law or the discipline of attorneys." Id. at 1095.
*1032 Less than two months after we denied the State's petition, Governor Chiles signed into law chapter 94-89, House Bill 2281 entitled "An act relating to public employees." Ch. 94-89, Laws of Fla. (codified at § 447.203(3)(j), Fla. Stat. (1997)). This law effectively denies all public employees who "by virtue of their positions of employment are regulated by the Florida Supreme Court" their constitutional right to bargain collectively. The legislature provided the following reason for passing this law:
This action by the Legislature should respond to the arguments recently presented to the Florida Supreme Court in which the parties questioned whether the exclusion of an exemption from collective bargaining for government lawyers was evidence of the Legislature's intent to either waive or consent to "any conflicts with or alterations of the traditional attorney-client relationship" between governmental bodies and their lawyers. The Legislature is constitutionally empowered to provide the standards and guidelines for implementing the collective bargaining rights of public employees as provided in Article I, section 6, Florida Constitution. Therefore, the Legislature has the authority to determine that the State has a compelling interest in excluding certain persons, including government lawyers, from the collective bargaining process in the same manner in which it has excluded other persons who have managerial, confidential or otherwise unique employment relationships with the State.
By excluding government lawyers from collective bargaining, the Legislature has determined that a necessity exists whereby government attorneys give complete confidentiality, fidelity and loyalty to a governmental body while conducting its legal affairs. This necessity aligns the attorney with the governmental body and acknowledges the mutual trust, exchanges of confidence, reliance on judgment and personal nature of the attorney-client relationship that would not exist if the attorney were able to continuously sue his or her client/employer to enforce the terms of a collective bargaining agreement.
Fla. H.R. Comm. on Empl. & Mgmt. Rel., HB 2281 (1994) Staff Analysis 3 (final April 11, 1994) (on file with comm.).
Based on this new law, PERC dismissed SEAG's petition. State Employees Attorneys Guild v. State, 20 F.P.E.R. ¶ 25151 (1994). SEAG appealed, arguing that section 447.203(3)(j), Florida Statutes (Supp. 1994), was unconstitutional. The district court affirmed PERC's decision "without prejudice to SEAG's right to seek a declaratory judgment in circuit court concerning the constitutionality of section 447.203(3)(j), Florida Statutes (Supp. 1994)." State Employees Attorneys Guild v. State, 653 So.2d 487, 489 (Fla. 1st DCA 1995).
SEAG, along with a government lawyer, filed an action in the circuit court seeking a declaration that section 447.203(3)(j) was unconstitutional under article I, section 6 of the Florida Constitution.[1] After a three-day bench trial, the court struck down section 447.203(3)(j), concluding that it unconstitutionally infringed upon the right of government lawyers to bargain collectively. State Employees Attorneys Guild v. Chiles, No. 95-3222 (Fla.2d Cir. Ct. May 19, 1997). The district court affirmed. Chiles v. State Employees Attorneys Guild, 714 So.2d 502 (Fla. 1st DCA 1998). Judge Benton's opinion provides in relevant part:
For public employees, the state constitutional right to work provision contemplates legislative implementation. See Dade County Classroom Teachers Ass'n, 269 So.2d at 685 (citing Dade County Classroom Teachers' *1033 Ass'n v. Ryan, 225 So.2d 903 (Fla. 1969)); Little & Lohr, supra, at 627. The Legislature cannot, however, abridge public employees' right to bargain collectively, absent a compelling state interest making it necessary to do so. See State v. Florida Police Benevolent Ass'n, 613 So.2d 415, 419 (Fla.1992) ("[T]he legislature may not restrict the right to bargain."). Our supreme court requires strict judicial scrutiny of any statute that interferes with public employees' rights to bargain collectively. Hillsborough County G.E.A. v. Hillsborough County Aviation Auth., 522 So.2d 358, 362 (Fla.1988). "The right to bargain collectively is ... subject to official abridgement only upon a showing of a compelling state interest." Id. See Florida Bd. of Bar Examiners Re: Applicant, 443 So.2d 71, 74 (Fla.1983) ("The compelling state interest or strict scrutiny standard imposes a heavy burden of justification upon the state to show an important societal need and the use of the least intrusive means to achieve that goal.").
With respect to the very statutory provision at issue here, we have indicated that, in order to survive a constitutional challenge, it "must serve that compelling state interest in the least intrusive means possible." SEAG, 653 So.2d at 488. In this way, we refined or arguably acknowledged implicitly that the decision in Hillsborough County G.E.A. had supersededthe standard of review we had earlier enunciated for such cases. See United Faculty of Fla. v. Board of Regents, 417 So.2d 1055, 1056 (Fla. 1st DCA 1982) (holding the state need make only a "strong showing of a rational basis for abridgment which is justified by a compelling state interest"); City of Tallahassee v. Public Employees Relations Comm'n, 393 So.2d 1147, 1150 (Fla. 1st DCA 1981). The right to bargain collectively is a "fundamental right." Hillsborough County G.E.A., 522 So.2d at 362. A statute abridging the right of state employees to bargain collectively is consonant with the constitution only if it vindicates a compelling state interest by minimally necessary means.
Because section 447.203(3)(j) diminishes this fundamental right, the state must demonstrate that the statute can withstand strict scrutiny. See Hillsborough County G.E.A., 522 So.2d at 362; Winfield v. Division of Pari-Mutuel Wagering, 477 So.2d 544, 547 (Fla.1985) ("The right of privacy is a fundamental right which we believe demands the compelling state interest standard. This test shifts the burden of proof to the state to justify an intrusion on privacy.").[[2]]
The state points to conclusions drawn in a committee staff analysis that "the Legislature has determined that a compelling state interest exists whereby government attorneys must give complete confidentiality, fidelity and loyalty to the State and local government while conducting its legal affairs." Staff of Florida House of Representatives Committee *1034 on Employment & Management Relations, Final Bill Analysis & Economic Impact Statement for HB 2281 (1994). The same analysis also concluded that the attorney-client relationship would be at risk if a state-employed attorney could sue to enforce the terms of a collective bargaining agreement. Id. These conclusions do not, however, obviate the need for judicial scrutiny.
The trial court examined the statute independently to ascertain whether the committee staffs views, which reflect the state's position, were borne out. To that end, the trial court took evidence on whether section 447.203(3)(j) serves a compelling state interest and whether it does so by means least burdening state employees' rights to bargain collectively. The lower court found
that the state of Florida does have a compelling interest in the lawyer-client relationship, as codified in the Rules of Professional Conduct within the Rules Regulating the Florida Bar, between the state and the attorneys it employs. The particular obligations of competence, diligence, confidence, and the avoidance of conflicts of interest owed by lawyers to their clients are defining characteristics of the functions of a lawyer. The fact that a lawyer is hired by a state agency rather than by individual clients does not negate a lawyer's basic ethical obligations.
The interest public employers have in the relationship between themselves as clients and their employees who represent them as attorneys may fairly be said to be compelling. See Rosenberg v. Levin, 409 So.2d 1016, 1021 (Fla.1982) (stating the relationship is "one of special trust and confidence"); State ex rel. Florida Bar v. Dawson, 111 So.2d 427, 432 (Fla.1959); see also The Florida Bar v. Doe, 550 So.2d 1111, 1113 (Fla.1989); Sohn v. Brockington, 371 So.2d 1089, 1093 (Fla. 1st DCA 1979) (citing Salopek v. Schoemann, 20 Cal.2d 150, 124 P.2d 21 (1942) (Gibson, C.J., concurring)).
The remaining issue is whether a complete ban on collective bargaining by public employees working as lawyers is required in order to preserve these attorney-client relationships. On this point, the trial court determined that the state had presented "no evidence" that the statute under challenge was necessary to protect the asserted state interest.
The compelling state interest in retaining competent, professional attorneys does not support a finding of a compelling state interest in preventing any collective bargaining by state employed attorneys. The state presented no evidence to support the position that government employed attorneys would abandon their ethical obligation of confidentiality, fidelity and loyalty by becoming members of a labor organization.
The findings of a trial court are presumptively correct and must stand unless clearly erroneous. See Marshall v. Johnson, 392 So.2d 249, 250 (Fla. 1980); Shaw v. Shaw, 334 So.2d 13, 16 (Fla.1976); Florida E. Coast Ry. v. Department of Revenue, 620 So.2d 1051, 1061 (Fla. 1st DCA 1993).
Because Florida has not yet permitted attorneys employed as such by public employers to bargain collectively, the trial court considered evidence from other states. It found that other jurisdictions permit state-employed attorneys to bargain collectively without any apparent harm to the attorney-client relationship. Evidence showed that, in those states, governmental entities that allow their attorneys to bargain collectively have been able to conduct their legal affairs effectively, meet their legal obligations, and otherwise carry out their missions. Attorneys employed by the federal government, including estate and gift tax attorneys employed by the Internal Revenue Service, see National *1035 Agreement Between the Internal Revenue Service and the National Treasury Employees Union, Doc. 6647 (Rev.7-94), Cat. No. 453130, at 2 (Executed Apr. 15, 1994), and attorneys who work in the headquarters office of the general counsel of the National Labor Relations Board itself, see Agreement Between the General Counsel of the National Labor Relations Board and the NLRB Professional Association 1 (Executed Sept. 26, 1989), also engage in collective bargaining.
The state expressed concern that collective bargaining will require it to compartmentalize its legal staff in order to ensure that conflicts do not occur. Even assuming some additional compartmentalization will be required, the administrative interest in avoiding additional compartmentalization must be viewed in light of the fundamental right to bargain collectively. See, e.g., Tashjian v. Republican Party of Conn., 479 U.S. 208, 218, 107 S.Ct. 544, 93 L.Ed.2d 514 (1986) (finding that the state cannot constrain a political party's right of association for administrative convenience); Shapiro v. Thompson, 394 U.S. 618, 633-34, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (stating that a state's administrative needs did not justify a one-year waiting period for new residents to obtain welfare).
The evidence showed that the collective bargaining process is not always free of litigation. But the trial court found:
The state acknowledges that there have been suits filed by government employed attorneys based upon alleged gender discrimination, racial discrimination, disabilities discrimination, and others in the absence of collective bargaining that have not interfered with the state's ability to carry out its legal duties and missions. There is no reason to believe that suits by union government attorneys would impact the operations of a state agency any more than a suit by state employed attorneys who were prohibited from unionizing. The court concludes that those government agencies that allow collective bargaining have not suffered any adverse impact from such collective bargaining.
We have been shown no basis for disturbing the trial court's findings of fact in this regard.
Nor did the trial court find that collective bargaining impugns or denigrates the ethical standards that lawyers should live by. Instead, the lower court found:
There is no prohibition in the Florida Rules Regulating the Bar against attorney membership in a union.... Thus the Rules Regulating the Florida Bar would continue to govern and guide the conduct of attorneys who were employed by state government, whether or not they were members of a labor organization. Because the ethical rules governing attorneys licensed to practice law in Florida apply to lawyers employed by the State of Florida, and because collective bargaining does not require state agencies to agree to proposals which breach the attorney-client relationship in violation of the ethical canons, the state has failed to show a compelling interest in preventing all collective bargaining by attorneys employed by the state. There is no inherent conflict created by lawyers collectively bargaining with clients.
The trial court credited evidence that government attorneys who bargain collectively can and do maintain the ethical standards required by rules governing professional conduct.
Attorneys representing public entities are under the same professional obligations to their clients whether they are retained or whether they are salaried employees. Attorneys violating these rules are subject to sanctions, whether they violate them collectively or individually. In finding "that collective *1036 bargaining by state-employed attorneys does not encroach upon this Court's jurisdiction over ... the discipline of attorneys," State ex rel. Chiles, 630 So.2d at 1095, the supreme court has in effect rejected the argument the state makes here that permitting attorneys to bargain collectively would somehow entail a breach of professional ethics. See id.

In short, the state did not demonstrate that a blanket ban on collective bargaining by public employees working as attorneys is the least onerous means of protecting the attorney-client relationships between the lawyers and the public entities which employ them. Evidence of collective bargaining procedures in other jurisdictions showed that collective bargaining procedures can be fashioned to accommodate both the public employers' interests in assuring fidelity and competence in their attorneys and the attorneys' constitutional right as public employees to bargain collectively. We hold that the trial court correctly declared section 447.203(3)(j), Florida Statutes (1997), unconstitutional.
State Employees Attorneys Guild, 714 So.2d at 505-08.
We agree with the decisions of the district court and the trial court and adopt their reasoning as our own. The State has failed to demonstrate that its interest in preserving the attorney-client relationship justifies an absolute prohibition against collective bargaining by public sector lawyers. It is not seriously disputed that collective bargaining entails an adversarial procedure. However, as the trial judge indicated in her order, the wisdom of allowing public employees to bargain collectively is not before the Court. The people of this state foreclosed this debate in 1968 by adopting the current version of article I, section 6 of the Florida Constitution. That provision expressly applies to "employees" without limitation, except that public employees do not have the right to strike. Moreover, we agree with the trial court that the possibility or even probability that litigation will arise from collective bargaining is not, by itself, a sufficient basis to hold that all government lawyers are not entitled to enforce this constitutional right. We disagree with the State's argument that lawyers may not unionize without first securing the client's (here the State's) consent, see Rule of Professional Conduct 4-1.7(b),[3] because of the adversarial nature of collective bargaining.
Our decision is consistent with the conclusion reached by the American Bar Association (ABA) and The Florida Bar Board of Governors, which is that lawyer collective bargaining is not inherently incompatible with the attorney-client relationship. The ABA's position is articulated in Ethical Consideration 5-13 which states that "[a]though it is not necessarily improper for a lawyer employed by a corporation or similar entity to be a member of an organization of employees, he should be vigilant to safeguard his fidelity as a lawyer to his employer, free from outside influence." Model Code of Professional Responsibility EC 5-13 (1980). The Florida Bar Board of Governors has a similar opinion to that of the ABA. See Fla. Bar Bd. of Govs. Advisory Ethics Op. 77-15 (May 13, 1978). Although the Board concluded that a lawyer does not violate ethical standards simply by being a member of a union, it cautioned that "[i]f faced with a choice between following the Code of Professional Responsibility or following a union's wishes, it is clear that a government lawyer who is a member of the union must follow the Code and the Disciplinary Rules *1037 thereof as promulgated by the Supreme Court of Florida." Id. See also City of Philadelphia ex rel. Harris v. Pennsylvania Labor Relations Bd., 163 Pa.Cmwlth. 628, 641 A.2d 709, 712 (1994) ("[T]he fact that the attorney-employees are members of a union does not in and of itself, in our view, create a situation that inevitably places those attorneys in violation of an ethical rule.").
We recognize the strength of the State's public policy argument, and this Court will remain vigilant in guarding the traditional lawyer-client obligations of all lawyers, including lawyers who are public employees. The Florida Bar will likewise remain vigilant. See Gerlach v. Donnelly, 98 So.2d 493, 498 (Fla.1957) ("There is no relationship between individuals which involves a greater degree of trust and confidence than that of attorney and client."). We emphasize that article I, section 6 of the Florida Constitution does not authorize a violation of the Rules of Professional Conduct nor does it modify the traditional duty of complete loyalty that a lawyer owes her client. Thus, we specifically note that the Rules Regulating The Florida Bar and a lawyer's traditional duty of loyalty prevail over a lawyer's activities in connection with the collective bargaining process which includes, but is not limited to, negotiations of the bargaining agreement and any litigation which may arise out of that agreement. If, as a result of the collective bargaining process, a lawyer violates a rule of conduct or breaches the duty of loyalty, then that lawyer will be subject to discipline by this Court under article V, section 15 of the Florida Constitution.
In this regard, we approve of the decision reached by the California Supreme Court in Santa Clara County Counsel Attorneys Ass'n v. Woodside, 7 Cal.4th 525, 28 Cal.Rptr.2d 617, 869 P.2d 1142 (1994). In Santa Clara, the Court held that public sector lawyers who sue to enforce their rights to bargain collectively under statutory law do not run afoul of their traditional duty of loyalty owed to their employer/client. Id. at 1157-58. The court did caution, however, that these lawyers "are held to the highest ethical obligations to continue to represent the client in the matters they have undertaken, and that a violation of their duty to represent the client competently or faithfully, or of any other rule of conduct, will subject those attorneys to the appropriate discipline, both from the employer and from the State Bar." Id. at 1158. The court adopted the following standard:
[I]n determining whether an action taken by an attorney or employee association violates the attorney's ethical obligations, we look not to whether the action creates antagonism between the attorney/employee and the client/employer, since such antagonism in the labor relations context is unfortunately commonplace; rather, we seek to ascertain whether an attorney has permitted that antagonism to overstep the boundaries of the employer/employee bargaining relationship and has actually compromised client representation.
Id. at 1157.
Accordingly, we hold that section 447.203(3)(j), Florida Statutes (1997), is unconstitutional and affirm the decision below. The State has failed to show that its interest in preserving the attorney-client relationship warrants a complete ban on government lawyer collective bargaining. We decline to address the additional issue raised by the State.
It is so ordered.
HARDING, C.J., SHAW, ANSTEAD, PARIENTE and LEWIS, JJ., and OVERTON, Senior Justice, concur.
NOTES
[1] The complaint originally named Secretary of State Sandra Mortham and PERC as defendants. The trial court entered an order on July 19, 1996, substituting Governor Lawton Chiles as the sole defendant.
[2] Contrary to this precedent, the State argues that the proper test to analyze this statute is the one applied by the First District Court of Appeal in United Faculty of Florida, Local 1847 v. Board of Regents, 417 So.2d 1055, 1056 (Fla. 1st DCA), clarified, 423 So.2d 429 (Fla. 1st DCA 1982): a strong showing of a rational basis for abridgment which is justified by a compelling state interest. Based on Local 1847, the State argues that the lower courts erred in applying the least intrusive means test. We reject this argument. The standard advocated by the State was applied by the First District which later corrected itself in light of this Court's opinion in Hillsborough County Aviation Authority. See State Employees Attorneys Guild v. State, 653 So.2d 487, 488 (Fla. 1st DCA 1995). It is academic that an inextricable part of the compelling state interest test is that the legislation achieve its desired result in the least intrusive means possible. The State has presented no meritorious argument why a less stringent standard should be applied here. The statute at issue here is not a "regulation" of the bargaining process; rather, it is the complete abridgment thereof for an entire class of public employee. See City of Tallahassee v. Public Employees Relations Comm'n, 410 So.2d 487, 490 (Fla.1981).
[3] Rule 4-1.7(b), "Duty to Avoid Limitation on Independent Professional Judgment," states:

A lawyer shall not represent a client if the lawyer's exercise of independent professional judgment in the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person or by the lawyer's own interest, unless:
(1) the lawyer reasonably believes the representation will not be adversely affected; and
(2) the client consents after consultation.